**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Wesley Ian Aaron, ) | |
| Petitioner, ) | CV-07-560-TUC-DCB (JJM) |
| ) | |
| vs. ) | **REPORT & RECOMMENDATION** |
| ) | |
| Dora B. Schriro, et al., ) | |
| Respondents. ) | |

Petitioner Wesley Ian Aaron, presently incarcerated at the Great Plains Correctional Facility, Hinton, Oklahoma, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of the Court, this matter was referred to Magistrate Judge Marshall for Report and Recommendation. Before the Court are the Petition (Doc. 1), Respondents' Answer (Doc. 10) and Petitioner's Reply (Doc. 11). The Magistrate Judge recommends the District Court, after its independent review of the record, deny and dismiss the petition.

**I.     BACKGROUND**

On January 17, 2003, Petitioner was indicted on three counts of armed robbery, one count of robbery, three counts of first degree burglary, one count of second degree burglary, kidnaping, and four counts of aggravated assault arising out of four separate incidents that occurred on December 29, 2002, December 30, 2002, December 31, 2002, and January 7,

2003. (Ex. A; R.T. 4/14/04.)[1] The State later moved to dismiss the simple robbery and the second degree burglary counts associated with the December 30, 2002 incident and, after trial by jury, Petitioner was found guilty on the remaining charges on April 19, 2004. (Ex. A (Minute Entry, April 13, 2004, p. 2); Ex. A (Verdict Forms).) On July 7, 2004, the trial court sentenced Petitioner to concurrent and consecutive terms of imprisonment totaling 36.75 years. (*Id.* (Sentencing Order).)

Along with the Indictment, the State filed an Allegation of Offenses Not Committed On The Same Occasion, Consolidated For Trial, which stated:

> The County Attorney of the County of Pima, in the name of the State of Arizona, and by its authority, pursuant to A.R.S. § 13-702.02(A) and (B), alleges Count(s) One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve and Thirteen herein, of the Indictment, are offenses not committed on the same occasion, consolidated for trial.
>
> In the event the counts are severed for trial, the County Attorney of the County of Pima, in the name of the State of Arizona, and by its authority, pursuant to A.R.S. § 13-604 (A) and (B), hereby alleges each count as a prior conviction to each other count.

(Ex. A.) On March 26, 2003, Petitioner filed a Motion to Sever Counts in which he moved the trial court for an order severing the counts against him into four separate cases for trial. (Ex. A (Motion to Sever Counts).) In doing so, Petitioner gave notice that "he will accept the relief sought only on the condition that the court also rules that, upon severance, the State is barred from alleging that a conviction obtained on any count will be a 'historical prior conviction' for purposes of his sentencing under A.R.S. § 13-604 on any other count." *Id.*

At the same time, Petitioner filed a Motion to Strike State's Conditional Allegation of Historical Prior Convictions on the basis that "the statutory scheme that mandates greater punishment solely as a result of a severance is unconstitutional." *Id.* In the Motion to Strike, Petitioner argued at length that, "[b]ecause the statutory sentencing scheme embodied in A.R.S. §§ 13-604 and 13-702.02 requires the imposition of a harsher sentence solely because

---

[1] Unless otherwise noted, all referenced exhibits are those attached to Respondent's Answer to Petition for Writ of Habeas Corpus.

2

the . . . charges were severed for trial, it violated constitutional equal protection principles." (Ex. A (Motion to Sever), p. 2.).) By Minute Entry Order dated April 24, 2003, the trial court denied Petitioner's motion stating that "both A.R.S. 13-702.02 and 13-604 are constitutional, and find support for this position in *State v. Thompson*, 200 Ariz. 439 which, while not directly on point, juxtaposes the statutes with clarity and approval." *Id*. The order also reflects that, based on the court's ruling, Petitioner did not want the counts severed for trial. The Arizona Court of Appeals, in affirming Petitioner's conviction on direct appeal, summarized the facts underlying Petitioner's conviction and his Constitutional claims as follows:

> After a jury trial, appellant Wesley Ian Aaron was convicted of numerous criminal charges, which had been consolidated for trial, arising from three armed robberies committed on separate occasions and at separate locations. Under the sentencing scheme established in A.R.S. §§ 13-604 and 13-702.02, Aaron faced a harsher sentence if he had decided to seek severance of the charges under Rule 13.4(b), Ariz. R. Crim. P., 16A A.R.S. He argues the scheme is unconstitutional because it impermissibly burdened his Fifth Amendment rights and violates the Equal Protection Clauses of the United States and Arizona Constitutions and the doctrine of separation of powers.

(Ex. B, pp. 1-2.)

In the present petition, which respondents agree is timely and fully exhausted, Petitioner raises the same claims. As he explains it, Petitioner's focus "is the statutory scheme's enactment of two alternative sentencing ranges – one milder and one harsher – for every defendant who has convictions for felonies committed on more than one occasion, coupled with its enactment of a discriminatory rule to determine who gets sentenced within the milder range, and who within the harsher." *Reply*, pp. 1-2.

## II. DISCUSSION

In the Petition, Petitioner alleges two grounds for relief. In Ground One he claims a violation of the Equal Protection Clause of the Fourteenth Amendment resulted from the state court's application of "the statutory scheme set forth in A.R.S. § 13-604(A), (B), (C), (D), (G), (H), (J), (K), and (S), coupled with A.R.S. § 13-702.02 . . . ." The constitutional violation resulted from:

3

> discriminating arbitrarily, and/or without sufficient justification, against represented persons whose attorneys exercise their clients' rights to sever for resolution at separate trials joined counts charging the clients with unrelated offenses committed on either two, or else three or more, different occasions. The scheme requires the imposition of harsher sentence enhancement when a represented defendant is convicted of multi-occasion offenses after his counsel accepts such a severance than when he is convicted after his counsel declines such a severance.

Petitioner further explains the impact of the application of the statutory scheme:

> declining a severance meant (1) that the jury deciding each charge would hear inadmissible evidence that [Petitioner] committed other like offenses near in time and (2) that Aaron would be prevented from testifying about one incident while remaining silent and un-cross-examined as to the other two, but accepting a severance would subject [Petitioner] to statutory "severance penalty" in the event he was convicted of all charges.

*Petition*, pp. 5-6.

In Ground Two, Petitioner alleges that the same statutory scheme violates the Due Process Clause of the Fifth Amendment "by improperly imposing a penalty for the exercise of constitutional/statutory rights," and thereby, "compelling an improper choice between the exercise of constitutional rights . . . based on a specific procedural choice." *Id*. at p. 7.

**A.     AEDPA Standards**

Under the Anti-terrorism and Effective Death Penalty Act of 1996 "(AEDPA"), a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). *See Williams v. Taylor*, 120 S.Ct. 1495 (2000). A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000). In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's

1 judgment. *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002). A state court's decision can be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

**B.     Merits**

There being no dispute about the underlying facts and the implications of the situation Petitioner faced, the Court must evaluate whether the state courts' rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). "Clearly established federal law" consists of holdings of the Supreme Court at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Additionally, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010) (quotation marks and citation omitted).

The closest relevant Supreme Court authority is *United States v. Batchelder*, 442 U.S. 114 (1979). In *Batchelder*, the defendant was convicted under a statute, 18 U.S.C. § 922(h), making it a crime for persons previously convicted of crimes punishable by more than one year in prison to "receive any firearm . . . which has been shipped or transported in interstate or foreign commerce." On appeal, the defendant objected to his five year prison sentence because another statute, the now repealed 18 U.S.C.A.App. § 1202(a), provided a two year maximum sentence for certain felons, including the defendant, "who receives, possesses, or transports in commerce or affecting commerce . . . any firearm." 442 U.S. at 116-117. The Seventh Circuit Court of Appeals agreed with the defendant and concluded he could be sentenced to no more than the two year maximum provided under section 1202(a) due to doubts that Congress intended that the two statutes differently penalize the same conduct. *United States v. Batchelder*, 581 F.2d 626 (7th Cir. 1978). In so ruling, the appeals court avoided the constitutional question of whether the application of the statutes implicated "due

5

1  process and equal protection interest[s] in avoiding excessive discretion and in obtaining
2  equal justice." *Id.* at 631.
3        The United States Supreme Court reversed and found "no constitutional infirmities"
4  in the statutory scheme.  In relation to the question of whether the scheme left the prosecutor
5  with unconstitutional and "unfettered" discretion, the Court stated:

> there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements.  In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context.  The prosecutor may be influenced by the penalties available upon conviction, but this fact standing alone does not give rise to a violation of the Equal Protection or Due Process Clauses.

442 U.S. at 124-25.

      In the Reply in support of the Petition, Petitioner contends that *Batchelder* is distinguishable in that the statutory scheme at issue in the instant case "itself supplies the discriminatory rule that assigns defendants to sentencing under one of the tow statutory provisions." *Reply*, p. 18.  Petitioner continues:

> Unlike the statutory scheme in *Batchelder,* once the prosecution files its notice, as it did here . . ., demanding application of whichever enhancement provision is triggered by the procedural circumstances under which a defendant's convictions got entered, the scheme itself sorts defendants into coverage by one sentencing provision or the other.

*Id.*

      On the other hand, the government's contention is that:

> *Batchelder's* logic apples with equal force in the instant case. Like the federal statutes considered in *Batchelder*, §§ 13-604 and 13-702.02 provide for the possibility of different punishments for the same conduct. *See State v. Thompson*, 27 P.3d 796, 798 (Ariz. 2001).  Neither § 13-604 nor § 13-702.02 provides a defendant with his option as to sentencing because charging decisions are within the prosecutor's discretion. *See State v. Serna*, 857 P.2d 384, 388 (Ariz. App. 1993).  Just as equal protection was not implicated by the federal statutes, equal protection is not implicated by the prosecutor's discretion in seeking punishment under § 13-604 or § 13-702.02.

*Answer*, p. 11.

As the Court sees it, the resolution of the parties' disagreement as to the applicability of *Batchelder* has two possible outcomes, both of which are unfavorable to the Petitioner. Assuming *Batchelder* does not constitute clearly established precedent from the Supreme Court addressing the issue at hand, under the AEDPA, other clearly established Supreme Court authority must be identified and be shown to have been incorrectly applied before the Petitioner can prevail. However, in the Petition and Reply, Petitioner fails to identify such authority. Although he does cite to general principles for evaluating questions of due process and equal protection, there appears to be no Supreme Court authority, other than the *Batchelder* decision, that can arguably be construed as "clearly established precedent" on the issue at hand. As the Supreme Court has explained, if habeas relief depends upon the resolution of "an open question in [Supreme Court] jurisprudence," section 2254(d)(1) precludes relief. *Carey v. Musladin*, 549 U.S. 70 (2006). On this basis, this claim provides no grounds for relief.

Alternatively, and perhaps more accurately, the *Batchelder* decision can be interpreted as applying to the question at hand. Other authority has noted that "*Batchelder* has drawn criticism for its apparent, although perhaps inadvertent, failure to recognize the potential equal protection mischief that might occur when two criminal statutes are identical in every respect except for their respective penalties." *State v. Williams*, 175 P.3d 1029, 1034 (Ut.2007). While the scenario raised in *Williams* is not precisely what occurred here, the criticism the decision identifies, which comes from Professors Lafave, Israel and King in their treatise on criminal procedure, is helpful:

> In assaying the *Batchelder* reasoning, it is useful to think about three types of situations in which a defendant's conduct may fall within two statutes. They are: (1) where one statute defines a lesser included offense o the other and they carry different penalties (e.g., whoever carries a concealed weapon is guilty of a misdemeanor; a convicted felon who carries a concealed weapon is guilty of a felony); (2) where the statutes overlap and carry different penalties (e.g., possession of a gun by a convicted felon, illegal alien or dishonorably discharged serviceman is a misdemeanor; possession of a gun by a convicted felon, fugitive from justice, or unlawful user of narcotics is a felony); (3) where the statutes are identical (e.g., possession of a gun by a convicted felon is a misdemeanor; possession of a gun by a convicted felon is a felony). The Court in *Batchelder* had before

7

> it a situation falling into the second category, but seems to have concluded that the three statutory schemes are indistinguishable for purposes of constitutional analysis. But in terms of either the difficulties which are confronted at the legislative level in drafting statutes or in the guidance which is given to a prosecutor by the legislation, the three schemes are markedly different.

Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 13.7(a) (3rd ed. 2007). In the ensuing discussion, the Professors explain that the first category is "certainly unobjectionable" and the second category is "a harder case," and that the third category, which is the closest to the claim Petitioner raises, is "highly objectionable." This third category, they explain:

> is likely to be a consequence of legislative carelessness, and even if it is not such a scheme serves no legitimate purpose. There is nothing at all rational about this kind of statutory scheme, as it provides for different penalties without any effort whatsoever to explain a basis for the difference. It cannot be explained in terms of giving assistance to the prosecutor. Where statutes are identical except for punishment, the prosecutor finds not the slightest shred of guidance. It confers discretion which is totally unfettered and which is totally unnecessary. And thus the Court in *Batchelder*, is less than convincing in reasoning that this third category is unobjectionable simply because in other instances, falling into the first category, the need for discretionary judgment by the prosecutor has not been and cannot be totally eliminated.

*Id.* At least two salient points can be gleaned from this criticism of *Batchelder.* It suggests that the decision is properly interpreted as applying to situations, such as the one in which Petitioner finds himself, where a defendant can be subjected to a statutory scheme that provides different potential penalties for the same violations without any explanation. It also suggests that *Batchelder*, although "highly objectionable" on the point, concludes that such a scheme is not constitutionally infirm. Considering this discussion and the case itself, the Court cannot conclude that the state courts' reliance on *Batchelder* constituted an unreasonable application of federal law.

Petitioner's claims do add a notable wrinkle to the direct application of *Batchelder* to the facts in his case. He claims that he would have testified on his own behalf in relation to one of the charged incidents had he been able to sever the charges without subjecting himself to increased punishment for doing so. He claims he was forced into this posture in violation

of his Fifth Amendment right against self-incrimination. In *McGautha v. California*, 402 U.S. 183 (1971), the Supreme Court upheld the use of unitary trial in capital cases. *Id*. at 220. The defendant argued that unitary trials in capital cases are unconstitutional because they require a defendant either to remain silent and not testify about mitigation evidence in relation to punishment or risk having his mitigation testimony used against him on the issue of guilt. *Id.* at 210-11, 213. The Supreme Court rejected the defendant's argument and noted the hard reality that:

> The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow . . . . Although a defendant may have a right, even of constitutional dimension, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose.

*Id*. at 213 (citation omitted). The Court explained that "[t]he threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." *Id*. Here, Petitioner has not shown the Court that severance of the counts would have made any difference at all. No doubt Petitioner was confronted with a difficult decision, but nothing in this record indicates that requiring him to make the decision constituted a violation of his constitutional rights.

The record is also devoid of evidence that the joinder of the counts supports a claim of constitutional proportions. Even if joinder of the counts is viewed as improper, it "rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his [constitutional] right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). Petitioner alludes to the testimony he would have offered had he elected to sever the counts against him for trial, even indicating it was submitted to the trial court *in camera* and under seal. He has not, however, provided the proposed testimony here. Without knowing how innocuous or momentous the proposed testimony was, it is impossible for this Court to determine whether the joinder of all the counts resulted in an unfair trial.

**RECOMMENDATION**

Based on the foregoing, the Magistrate Judge recommends the District Court enter an order DISMISSING the Petition for Writ of Habeas Corpus (Doc. 1).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CV-07-0560-TUC-DCB**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 14th day of February, 2011.

_Jacqueline Marshall_
Jacqueline Marshall
United States Magistrate Judge