WO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Wesley Ian Aaron,<br>　　　　　Petitioner,<br>v.<br>Dora B. Schriro, et al.,<br>　　　　　Respondents. | CV07-560-TUC-DCB (JJM)<br><br>**ORDER** |

The Court finds that the Supreme Court has not clearly established that a repeat-offender sentencing scheme is unconstitutional which allows defendants convicted of multiple criminal charges, consolidated for disposition by trial or plea, to be sentenced less severely than defendants with multiple prior convictions arising from separate dispositions. Because this remains an open question in Supreme Court jurisprudence, habeas corpus provides no grounds for relief.

**BACKGROUND**

On March 11, 2008, the Petition was referred to Magistrate Judge Jacqueline Marshall for a Report and Recommendation (R&R) in accordance with 28 U.S.C. § 636(b)(1) and LRCiv. 72, Rules of Practice of the United States District Court for the District of Arizona.

On February 14, 2011, Judge Marshall recommended dismissing the habeas petition, pursuant to the state court's reliance on *United States v. Batchelder*, 442 U.S. 114 (1979). Alternatively, she recommended that the question raised by the Petitioner remains open and undecided by Supreme Court jurisprudence and that habeas relief is, therefore, foreclosed.

(R&R at 7.) This Court agrees with the Magistrate Judge's alternative conclusion and dismisses the Petition, accordingly.

**OBJECTIONS**

Petitioner filed written objections to the R&R, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ.P.72(b). Petitioner challenges Arizona's statutory repeat offender sentencing scheme for including a provision increasing punishment for repeat offenders, unless they waive their right to pursue severance of charges for trial. Lower sentences apply where charges of the same or similar character are disposed of in one proceeding.

The Petitioner was convicted in a consolidated trial for armed robbery, one count of simple robbery, three counts of first degree burglary, one count of second degree burglary, kidnaping, and four counts of aggravated assault arising out of four separate incidents that occurred on December 29, 2002, December 30, 2002,[1] December 31, 2002, and January 7, 2003. Along with the consolidated indictment, the State filed an Allegation of Offenses Not Committed on the Same Occasion, Consolidated for Trial, pursuant to A.R.S. 13-702.02 and A.R.S. 13-604.[2]

Under Arizona's repeat offender statute, A.R.S. § 13-604(K) (2003), the presumptive sentence for the third armed robbery would have been twenty-eight years. Under A.R.S. § 13-604(S) (2003), sequential convictions on the armed robbery, burglary in the first degree, kidnaping, and aggravated assault with a deadly weapon/dangerous instrument charges would have been "two or more" prior historical convictions for offenses of a dangerous nature and would have resulted in an enhanced sentence of life, without eligibility for suspension of sentence, probation, pardon or release from confinement until he had served not less than twenty-five years or the sentence was commuted.

---

[1]As to this offense, the simple robbery and second degree burglary charges were dismissed prior to trial.

[2]A.R.S. § 13-604, held unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the extent release status was decided by the court, not jury. *State v. Gross*, 31 P.3d 815, 817 (Ariz. App. 2001); A.R.S. § 13-702.02 repealed by Laws 2008, Ch. 301, § 25, eff. January 1, 2009.

Under A.R.S. § 13-702.02(2003), however, if these offenses, not committed on the same occasion, where consolidated for trial, the Defendant could comparatively receive a reduced sentence of 15.75 years.

Petitioner asserts that the harsher sentences imposed if charges are severed for trial unconstitutionally coerced him into forgoing his right to sever one charge and into giving up his right to testify on that charge. He argued to the trial court and to the state appellate court as he does here that the sentencing scheme created by A.R.S. 13-604 and 13-702 imposes a harsher sentence solely where the charges are severed for trial, which violates Fifth Amendment constitutional and Fourteenth Amendment equal protection principles. (R&R at 2-3 (citing Ex. A (Motion to Sever), p.2)).

Petitioner argues that the statutory scheme violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates arbitrarily between defendants convicted of multi-occasion offenses, who exercise their rights to severance and those who do not. Petitioner argues that the statutory scheme violates the Fifth Amendment because choosing severance will often be necessary to protect a defendant's right against self-incrimination or to testify and overall be necessary to obtain a fair trial.

Petitioner argues that the state court failed to make the requisite "rational basis" determination required by the Equal Protection Clause in the Fourteenth Amendment. *See Romer v. Evans*, 517 U.S. 620, 631 (1996) (explaining that for laws that neither burden a fundamental right nor target a suspect class, the supreme court will uphold a legislative classification so long as it bears a rational relationship to some legitimate end). This requires a showing that the classification at issue bears some fair relationship to a legitimate public purpose. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Petitioner argues that the state court failed to make the requisite "strict scrutiny" determination required when a classification involves a fundamental right, like the Fifth Amendment Due Process Clause, because the state court did not consider whether the statutory scheme was precisely tailored to serve a compelling governmental interest. *Id.* at 216-217.

Instead, Petitioner argues, the state court and the Magistrate Judge misapplied Supreme Court law when it relied on *Batchelder* to find the statutory scheme is constitutional in respect to his equal protection claim.

In support of his due process claim, he relies on Supreme Court cases finding it unconstitutional to penalize the assertion of a constitutional right, *United States v. Jackson*, 390 U.S. 570 (1968), such as when a prosecutor files new, more serious charges, arising out of the same conduct, in response to a defendant's exercise of his statutory right to file an appeal *de novo*, *Blackledge v. Perry*, 417 U.S. 21 (1974), or where a defendant is compelled to choose between testifying as the first witness or not at all, *Brooks v. Tennessee*, 406 U.S. 605 (1972). Petitioner argues that in this case, the state court failed to answer "'the threshold question [of] whether compelling the election impairs to an appreciable extent' – both the right to trial/testimonial fairness and the bedrock constitutional right to bodily liberty." (Objection at 12 (citing *McGautha v. California,* 402 U.S. 183, 213 (1971), *overruled on other grounds Crampton v. Ohio*, 408 U.S. 941 (1972)).

## STANDARD OF REVIEW

### Report and Recommendation: 28 U.S.C. § 636(b)(1).

The duties of the district court in connection with a R&R by a Magistrate Judge are set forth in Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b), 28 U.S.C. § 636(b)(1). Where the parties object to a R&R, a district court judge "shall make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objections are filed, the district court need not review the R&R *de novo. Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir.2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir.2003) (en banc).

This Court's ruling is a *de novo* determination as to those portions of the R&R to which there are objections. 28 U.S.C. § 636(b)(1)(C). To the extent that no objection has been made, arguments to the contrary have been waived. *See* 28 U.S.C. § 636(b)(1)(A)

(objections are waived if they are not filed within ten days of service of the R&R), *see also McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to magistrate's report waives right to do so on appeal); Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court Northern Dist. California*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation).

## Habeas Corpus: 28 U.S.C. § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court must deny a habeas petition where the state court has resolved the claim on the merits, unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court's decision is contrary to clearly established law when it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000). A state court unreasonably applies clearly established law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (quoting *Williams,* 529 U.S. at 413).

Under the "unreasonable application" clause, the state court decision must be more than incorrect or erroneous. *Lockyer*, 538 U.S. 63, 75 (2003); *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010). Rather, the state court's decision "must be objectively unreasonable," not just incorrect or erroneous. *Carey v. Musladin,* 549 U.S. at 75-76 (2006). Habeas relief is warranted for an unreasonable application of law, where the state court decision is "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced,"*id.* at 76, *accord Panetti v. Quarterman*, 551 U.S.

- 5 -

930 (2007), <u>but only when the principle "clearly extend[s]" to the new set of facts</u>, *Wright v. Van Patten,* 552 U.S. 120, 125 (2008) (per curiam) (emphasis added).

Under either clause of 28 U.S.C. § 2254(d)(1), this Court must determine whether at the time the state court rendered its decision on the merits, there existed clearly established Federal law, as determined by the Supreme Court of the United States.  The Supreme Court has defined "clearly established Federal law" under § 2254(d)(1) to be "'the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'" *Musladin,* 549 U.S. at 74 (quoting *Williams,* 529 U.S. at 412).

A review of the Supreme Court's recent case law suggests that when a state court may have found a principled distinction between the case, *sub judice*, and Supreme Court case law, then the law is not clearly established for the state-court case.  *Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010).

For example, in *Musladin* the Supreme Court vacated a decision of this circuit, *Musladin v. Lamarque,* 427 F.3d 653, 661 (9th Cir.2005) (*Musladin I*), which held that the state court unreasonably applied clearly established federal law by allowing the victim's family members, in a murder trial, to wear buttons depicting the victim while in the presence of the jury.  This circuit relied on two Supreme Court cases: *Estelle v. Williams,* 425 U.S. 501 (1976), and *Holbrook v. Flynn,* 475 U.S. 560 (1986). In *Williams,* the Court found that when a defendant appears before the jury in prison garb it is so likely to influence the jury throughout the trial that it creates an unacceptable risk of impermissible factors coming into play and violates the defendant's right to a fair trial.  *Williams*, 425 at 505-06.  The Court applied this same logic in *Flynn,* but held that the presence of extra security personnel in the courtroom during trial did not necessarily violate the Constitution because, unlike the situation in *Williams,* it was not "inherently prejudicial." *Flynn,* 475 U.S. at 569.  In *Musladin I,* the circuit court granted habeas relief because the presence of the victim's family in the courtroom while wearing buttons was inherently prejudicial and found the state court's decision was an unreasonable application of the test described in *Williams* and *Flynn. Musladin I,* 427 F.3d at 658-61.

- 6 -

The Supreme Court reversed, finding that there was no clearly established federal law to apply because *Williams* and *Flynn* dealt with government-sponsored practices, and Musladin challenged courtroom conduct by private actors. The Supreme Court explained, "'Given the lack of holdings from [the Supreme Court] regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Murdoch*, 609 F.3d at 991 (quoting *Musladin*, 549 U.S. at 77).

"[] Under the highly deferential standard established by AEDPA and the Supreme Court, as long as the state court could have found a principled reason not to apply the Court's precedents to the current case, [the federal courts] may not grant habeas relief." *Murdoch*, 609 F.3d at 995.

In *Murdoch*, the court considered whether the Sixth Amendment Confrontation Clause must yield to attorney-client privilege. The court considered Supreme Court cases examining conflicts between the Confrontation Clause and other rights and privileges, including the marital privilege, *Crawford v. Washington*, 541 U.S. 36 (2004), the Fifth Amendment privilege against self-incrimination, *Douglas v. Alabama*, 380 U.S. 415 (1965), the state's interest in the confidentiality of adjudications of juvenile delinquency, *Davis v. Alaska*, 415 U.S. 308 (1974), and *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), where the Supreme Court said it would not consider the question of whether the attorney-client privilege might yield in the face of constitutional rights. The court found the Supreme Court had not considered the question. Consequently, there was no clearly established federal law on the issue, and the state court could not be said to have unreasonably applied it. *Murdoch*, 609 F.3d at 995-996.

Against this highly deferential backdrop, the Court considers the Petition. The starting point is the last reasoned decision by a state court. *Baker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

/////

/////

**MEMORANDUM DECISION, MARCH 16, 2006**

The state court understood that Aaron wanted to testify about the January robbery, but not the December robberies, (Decision ¶ 4), and that he argued the sentencing scheme was unconstitutional "because it coerced him into giving up his fundamental Fifth Amendment rights in order to get a lower sentence under A.R.S. 13-702.02," *id.* ¶5. It noted that the Fifth Amendment guarantees that a criminal defendant may not be compelled to testify or prevented from testifying in his own defense, and the right to sever offenses which have been joined only because they are of the same or similar character protects these rights. *Id.* ¶ 4.

The state court recognized that "a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." (Decision ¶ 4 (citing *McGautha*, 402 U.S. at 213); (R&R at 9 (same)). The state court also noted that the "relevant inquiry 'is whether compelling the election impairs to an appreciable extent any of the policies behind the right involved.'" *Id.*

The state court framed the Fifth Amendment claim as follows: "whether Aaron's decision to forgo severance of the charges and proceed to the consolidated trial was unconstitutionally coerced by the possibility of increased sentences under § 13-604." (Decision ¶¶ 4-5.)

The state found no cases directly addressing the issue, but noted analogous situations in which a defendant was required to make difficult choices involving Fifth Amendment rights, including Supreme Court cases as follows: *Spevack v. Klein*, 385 U.S. 511, 515 (1967) (quoting *Griffin v. California*, 380 U.S. 609, 614 (1965) to explain that a penalty "is any sanction which makes the assertion of the Fifth Amendment privilege costly"); *Garrity v. New Jersey,* 385 U.S. 493, 497-98 (1967) (asking police officers to forfeit jobs or incriminate themselves was an unconstitutional demand); *Slochower v. New York Board of Higher Education,* 350 U.S. 551, 558-59 (1956) (discharging a teacher based solely on

1 invocation of Fifth Amendment rights was unconstitutional). (Decision ¶ 8.) The court
2 applied the Supreme Court's logic in *McGautha* to Aaron's case. (Decision ¶ 9.)

3 The state court found, "[I]n the context of Fifth Amendment rights, unless a defendant
4 suffers a penalty solely from choosing to exercise those rights, requiring the defendant to
5 make difficult choices does not automatically result in a constitutional violation." (Decision
6 ¶9.) The court found that Aaron's desire to testify on some but not all of the charges was not
7 the main cause of the potentially higher sentences. "Rather, committing armed robbery on
8 multiple occasions was the primary cause of his harsher sentences," *id.*, and waiving
9 severance reduced his exposure to enhanced punishments.

10 The state court also considered Petitioner's argument that "the sentencing scheme
11 violates the Equal Protection Clauses of the state and federal constitutions because it
12 subjects two identical defendants who are charged with multiple offenses to different
13 mandatory sentences based solely on whether their trials are separate or consolidated."
14 (Decision ¶ 12.) The Supreme Court in *Batchelder*, 442 U.S. at 123-124, found that "if 'an
15 act violates more than one criminal statute, the Government may prosecute [] under either so
16 long as it does not discriminate against any class of defendants.'" (Decision ¶ 1.) There is
17 no constitutional violation where a prosecutor chooses among potential sentencing statutes.
18 *Id.* The state court found no equal protection violation here because the prosecutor may
19 choose between applying the more harsh punishments under 13-604 or the more lenient
20 sentencing statute 13-702.02.

## CLEARLY ESTABLISHED FEDERAL LAW

22 Whether the law is clearly established is a threshold question under section 2254(d)(1)
23 because the AEDPA "'requires federal habeas courts to deny relief that is contingent upon a
24 rule of law not clearly established at the time the state court conviction became final.'"
25 *Welch v. Workman*, ___ F.3d ____, ___, 2011 WL 547279 * 5 (10th Cir. (Okla.), 2011)
26 (quoting *Williams v. Taylor*, 529 U.S. 362, 380 (2000)). Clearly established law refers to the
27 Supreme Court's "holdings, as opposed to the dicta." *Lockyer*, 538 U.S. at 71. *Musladin*
28 instructs that "Supreme Court holdings- the exclusive touchstone for clearly established

- 9 -

federal law- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). "[And], *Musladin* clarified that the threshold determination that there is no clearly established federal law is analytically dispositive in the § 2254(d)(1) analysis." *Id.* at 1017.

Petitioner argues that *Batchelder* does not apply because it involved two statutes, each mandating a different penalty for identical criminal conduct, and the settled rule that prosecutorial choice does not offend the constitution. The Supreme Court found that prosecutorial discretion is the same whether the prosecutor is making a charging decision under one of two statutes with different elements or choosing between statutes with identical elements and different penalties. *Batchelder*, 442 U.S. at 124-125. The Court found that it did not violate the equal protection clause for the prosecutor to be influenced by the penalties available upon conviction because the defendant has no constitutional right to chose a penalty scheme. *Id.* at 125.

Petitioner argues that the Arizona statutes at issue here, themselves, provide the criteria, rather than leaving it to the prosecutor to choose "a criterion, trusting him not to choose an arbitrary or irrational one." (Objection at 5.) Petitioner challenges the criterion, which is the consolidation or severance of charges for trial, as being arbitrary or irrational and as burdening his fundamental right to choose severance to protect his Fifth Amendment rights against self-incrimination and to testify.

Petitioner argues, "Because *Batchelder* is inapposite, and therefore does not constitute 'clearly established precedent,' not only did the state court unreasonably apply *Batchelder*, it also decided Aaron's case contrary to other clearly established Supreme Court precedent by confirming the equal protection validity of the challenged statutory classification without applying either the rational basis test or the strict scrutiny test to a putative governmental objective." *Id.* at 3.

Petitioner presents his equal protection challenge as a "garden-variety statutory classification case . . . ," and argues that the state court should have applied the "rational basis" test to determine whether the challenged statutory scheme bears some fair relationship

- 10 -

to a legitimate public purpose. *Plyler*, 457 U.S. at 216. Because the statutory scheme burdens a fundamental right, the Fifth Amendment Due Process Clause, the state court should have also applied the "strict scrutiny" test to determine whether the scheme has been precisely tailored to serve a compelling governmental interest. *Id.* at 216-17.

The discussion in the R&R describes *Batchelder* as the "closest relevant Supreme Court authority," (R&R at 5), and as the only Supreme Court decision "that can arguably be construed as 'clearly established precedent' on the issue at hand," *id.* at 7. The R&R offers a discussion, based on a criminal procedure treatise by Professors Lafave, Israel and King, which identifies three types of situations in which a defendant's conduct may fall within two statutes: 1) where one statute defines a lesser included offense of the other and they carry different penalties; 2) where the statutes overlap and carry different penalties, and 3) where the statutes are identical. *Id.* at 7-8. The R&R identifies the first as the situation considered in *Batchelder* and the third as the situation here. *Id.* at 8. The R&R notes that *Batchelder* has been criticized for "inadvertently failing to recognize the potential equal protection mischief that might occur when two criminal statues are identical in every respect except for their respective penalties." (R&R at 7 (citing *State v. Williams*, 175 P.3d 1029, 1034 (Utah 2007)). Finally, the Magistrate Judge recognizes that there is a "notable wrinkle" to directly applying *Batchelder* to the facts of this case, which is that the Petitioner asserts a violation of his Fifth Amendment right to testify "on his own behalf in relation to one of the charged incidents because he was not able to sever the charge without subjecting himself to increased punishment for doing so." *Id.* at 8.

When a Supreme Court decision does not "squarely address" the issue in the case or establish a legal principle that "clearly extends" to the new context, it cannot be said, under the AEDPA, that there is "clearly established" Supreme Court precedent addressing the issue and so we must defer to the state court's decision. *Murdoch,* 609 F.3d at 991-996. "[]Under the highly deferential standard established by AEDPA and the Supreme Court, as long as the state court could have found a principled reason not to apply the Court's precedents to the current case, we may not grant habeas relief." *Id.* at 995. Because there

- 11 -

are principled reasons, as identified in the R&R, for not applying *Batchelder* to the Petitioner's case, *Batchelder* may not serve as clearly established federal law, as determined by the Supreme Court, for purposes of habeas review and relief.

Petitioner's proffer of *Romer v. Evans* and *Plyler v. Doe* as clearly established federal law applicable to his case also fails. "'[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.'" *Welch v. Workman*, 2011 WL 547279 * 5 (Okla 2011) (quoting *House*, 527 F.3d at 1016 (relying on *Musladin*, 549 U.S. 76; *Van Patten*, 128 S. Ct. at 746).

In *Romer,* the Supreme Court applied the rational basis test and found the Equal Protection Clause in the Fourteenth Amendment was violated by state law that prohibited all branches of the government from acting to protect homosexual persons from discrimination. In *Plyler*, the Supreme Court found that a state law withholding state funds for education from children who were not "legally admitted" into the United States failed a stricter rational basis test. The Court found the children were neither a protected class nor was education a fundamental right, but nevertheless found the suspect nature of the classification and the importance of education violated the Equal Protection Clause in the Fourteenth Amendment.

Petitioner fails to provide any citation to Supreme Court law, which has applied the legal rules relied on by him, either the rational basis test or strict scrutiny test, to an equal protection challenge closely related to or in a similar context to the case at hand.

In addition to applying *Batchelder* to the equal protection claim, the state court applied *McGautha* to determine the merits of the Petitioner's Fifth Amendment Due Process claim. Petitioner also submits *United States v. Jackson*, 390 U.S. 570 (1968); *Blackledge v. Perry*, 417 U.S. 21 (1974), and *Brooks v. Tennessee*, 406 U.S. 605, 611-13 (1972). Petitioner's due process argument is that Arizona's statutory scheme forced him to forgo severance of the charges and proceed with a consolidated trial. He alleges infringement of his constitutional

rights to testify in his defense as to the January charges and his right against self-incrimination as to the December charges.

The strongest case in Petitioner's favor is *Jackson*, where the Supreme Court considered the Federal Kidnaping Act which provided for the death penalty if the person was harmed and a jury verdict recommended it. For all others, punishment was prison up to life. The Supreme Court held that the penalty provision in the statute was unconstitutional because it impaired the free exercise of the constitutional right to a trial by a jury.

The Supreme Court noted that, "if the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional." *Jackson*, 390 U.S. at 581. The Supreme Court considered Congress' objectives, and explained "the question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive." *Id.* at 582. Finding the goal of limiting the death penalty to cases in which a jury recommends it to be entirely legitimate, the Supreme Court found it could be achieved without penalizing those defendants who plead not guilty and demand a jury trial. *Id.*

The state court relied on *McGautha*, where the Supreme Court considered an Ohio statute that provided for a unitary determination of guilt and the death penalty by a jury after a single trial. In *McGautha,* the Court discussed *Jackson* and noted that it addressed the question outside the context of the constitutional requirement that in capital cases a jury must impose the death penalty. *McGautha*, 402 U.S. at 209. The Court discussed *Spencer v. Texas*, 385 U.S. 554 (1967) where it had rejected the contention that the Due Process Clause in the Fourteenth Amendment required a bifurcated trial so that evidence relevant solely to the issue of punishment would not prejudice the capital case as to guilt. *Id.* at 209-210.

Under the Ohio single-trial procedure considered in *McGautha*, the defendant could remain silent on the issue of guilt only at the cost of surrendering any chance to plead his case on the issue of punishment. Relying on a trilogy of Supreme Court cases from 1970,

involving guilty pleas and waivers of various Fifth Amendment rights made in order to obtain a benefit and avoid a burden which could not otherwise have been constitutionally imposed, *id.* at 212, the Supreme Court held that Ohio's unitary trial system was constitutional.

The Court held that the "criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow . . . Although a defendant may have a right, even of constitutional dimension, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." (R&R at 9 (citing *McGautha*, 402 U.S. at 213.)

In *McGautha*, the Court was considering unitary trials in death penalty cases, which involved a defendant's right to remain silent at his trial or to speak on his own behalf at the time of sentencing. In this case, the Petitioner asked the state court to consider Arizona's statutory penalty scheme applicable to multi-offenders, which involves the right to remain silent or to testify at the time of trial. In *McGautha*, a defendant wishing to exercise both rights had to choose between the two. Here, a defendant wishing to exercise all his constitutional rights could do so, but had to choose between harsher or more lenient penalties. This Court finds that for the narrow purpose of habeas review, *McGautha* is not clearly established Supreme Court precedent squarely addressing the issue or establishing a legal principle that clearly extends in the context of the Petitioner's case.

As noted by the Magistrate Judge, under *McGautha*, "the threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." *Id.*; Decision ¶ 4. The Petitioner provides no Supreme Court precedent for answering this question in the context of sentencing statutes like those at issue in this case, which provide varying degrees of enhanced penalties for repeat offenders with reduced penalties where charges are consolidated, thereby, causing defendants to choose between self-incrimination or not testifying in their own defense. Whether this impairs to an appreciable extent the policies behind the Fifth Amendment remains a question which is open and unanswered by the Supreme Court.

- 14 -

As to the Petitioner's equal protection and Fifth Amendment due process claims, the Court finds there was no unreasonable application of clearly established federal law, as determined by the Supreme Court. Therefore, the Arizona state court could not have unreasonably applied it, and the Court must deny habeas corpus relief.

## CONCLUSION

After *de novo* review of the issues raised in the Petitioner's objections, this Court agrees with the findings of fact and conclusions of law made by the Magistrate Judge in her recommendation to dismiss the Petition because the question raised by the Petitioner remains open and undecided by Supreme Court jurisprudence.

The Court adds that it agrees with the *Batchelder* and *McGautha* analysis found in both the R&R and the state court's decision.[3] But, that is not the question this Court is tasked to answer under the AEDPA, 28 U.S.C. § 2254(b)(1). Because there is no clearly established federal law, as determined by the Supreme Court, this Court must defer to the state court's findings on the merits of the Petitioner's constitutional claims.

**Accordingly,**

**IT IS ORDERED** that the Report and Recommendation is adopted as the Opinion of the Court.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus (Doc. 1) is DISMISSED.

/ / /

/ / /

---

[3] This Court agrees with the state court's conclusion that "[t]he sentencing scheme may act as a deterrent to seeking severance of consolidated charges, but a defendant is faced with many difficult decisions throughout the course of a criminal proceeding." (Decision ¶ 9.)

The Court has reviewed the *ex parte* proffer of evidence as to the testimony precluded by the consolidation of all the charges for trial, when Defendant waived his right to sever the January charge to avoid the harsher punishments for repeat offenders under A.R.S. 13-604. The Court finds no support for an argument that he was denied a fair trial. (R&R at 9 (citing *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986).

1 **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment
2 accordingly.

3 DATED this 31st day of March, 2011.

David C. Bury
United States District Judge